UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| DAVID SEVERANCE | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Cause No. 4:15-CV-00074-CAS |
| CHARLES CHASTAIN, ET AL. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANTS DR. ERNEST JACKSON AND JOYCE CHAMBERLIN'S SUGGESTIONS IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

COME NOW Defendants Dr. Ernest Jackson, and Joyce Chamberlin, by and through undersigned counsel, and for their Suggestions in Support of their Motion for Summary Judgment, hereby state as follows:

### Facts Common to These Defendants

During the time period as alleged in Plaintiff's Fourth Amended Complaint, Plaintiff was incarcerated at the Western Missouri Correctional Center ("WMCC"). (Defendants Jackson and Chamberlin's Statement of Uncontroverted Material Facts ("Facts"), Paragraph 1). Corizon, LLC, a private company contracted with the state of Missouri to provide medical care to offenders housed within its correctional facilities, employed Defendant Joyce Chamberlin at times relevant to this matter. (Facts Pg. 1, Paragraphs 2-3).   Defendant Ernest Jackson is the Director of Dental Services for the Missouri Department of Corrections. (Facts pg. 1, paragraph 2)  Dr. Jackson's duties

3573.53

include overseeing the clinical aspect of dental services for twenty Missouri Department
of Corrections ("MDOC") facilities with dental clinics and clinical work when needed,
and to evaluate requests for referrals for outside dental services. (Facts pg 1, paragraph
3).

On or about April 26, 2012, Plaintiff was punched in the jaw by another inmate
causing him to suffer a broken jaw. (Facts at pg. 2 paragraph 6).  Plaintiff underwent
surgery to repair his broken jaw using plates and screws on April 27, 2012. (Facts at pg. 2
paragraph 6). Plaintiff began to experience new issues at the fracture site and reported to
the medical staff at the MDOC that he was experiencing pain and swelling.  (Facts at pg.
2 paragraph 7)  Treatment of Plaintiff's jaw pain and the associated infection required the
removal of one of the plates on July 18, 2012. (Facts at pg. 2 paragraph 8).  Mr.
Severance was treated for pain, swelling, and other symptoms of a jaw infection over the
next nine months. (Facts at pg. 2-3 paragraph 9-12). Accordingly, on April 11, 2013, the
remainder of the implanted hardware was removed from his jaw by an outside medical
provider. (Facts at pg. 3 paragraph 13). On July 9, 2013, Mr. Severance self declared a
medical emergency and was seen by Defendant Chamberlin. (Facts at pg. 4 paragraph
22).  Nurse Chamberlin evaluated Plaintiff and notified the on call physician who
instructed her to send Plaintiff to the hospital by ambulance. (Facts at pg. 3 paragraph
16).  Plaintiff underwent a CT scan and other testing which were unremarkable. (Facts at
pg. 4 paragraph 24-25).  Plaintiff was returned to WMCC on the following day. (Facts at
pg. 4 paragraph 27).

Mr. Severance was told that his stroke symptoms would delay treatment of his
jaw for six to twelve months. (Facts at pg. 4 paragraph 28). In November 2013 Oral

3573.53

Surgeon Dr. Robert Bessey rated Plaintiff as a "IV" on the American Society of Anesthesiologists classification of physical health, and concluded that he was a poor candidate for bone graft repair. (Facts at pg. 4-5 paragraph 29).

Plaintiff's treating dentist requested Plaintiff be referred to the University of Missouri Otolaryngology department on May 20, 2014. (Facts at pg. 5 paragraph 38). Dr. Jackson consulted with the Regional Medical Director, who agreed in making the determination not to refer Plaintiff to the University of Missouri Otolaryngology department. (Facts at pg. 6 paragraph 42).

Plaintiff underwent cardiac stress testing in July 2014 after having been admitted to the hospital for chest pain in April. (Facts at pg. 5, paragraph 32 and Pg. 6, paragraph 46). These tests showed that Plaintiff was at risk of future cardiac events. (Facts at pg. 6 paragraph 46).  Plaintiff was cleared for non-cardiac surgery on September 22, 2014, however it was noted that he was still at an increased risk. (Facts at pg. 7 paragraph 53). Plaintiff was permitted to undergo a short procedure under anesthesia to remove his infected teeth in December 2014. (Facts at pg. 8 paragraph 57-59). Plaintiff underwent additional cardiac stress testing on January 5 and March 2, 2015 which noted clinically significant interval worsening. (Facts at pg. 8 paragraph 63-65).  Plaintiff was noted on August 11, 2015 to have worsening angina and to have increased his intake of nitroglycerine to combat the issue. (Facts at pg. 8-9 paragraph 69-70).  Plaintiff was released from Department of Corrections custody on June 6, 2016. (Facts at pg. 9 paragraph 74).

## Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered against a party "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed.R.Civ.P. 56(c).  The movant bears the burden of establishing both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp.*, 477 U.S. at 323; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Once the movant has met its burden, the nonmoving party may not rest on the allegations in its pleading alone, but must set forth evidence and specific facts showing a genuine issue of material fact exists on each element of its claim.  Fed.R.Civ.P. 56(c); see also *Matsushita*, 475 U.S. at 586 (stating the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts").

## Deliberate Indifference Standard

In actions by prison inmates against prison officials for deliberate indifference under 42 U.S.C. Section 1983, it must be proven that the plaintiff suffered from objectively serious medical needs; the defendant knew of the condition; and the defendant deliberately disregarded the complaint.  *Kitchen v. Miller*, 343 F.Supp.2d 820, 823 (E.D. Mo. 2004); and *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997).  The absence of proof for any one of these three elements is dispositive in an action for deliberate indifference under Section 1983. To support a claim of deliberate indifference

under 42 U.S.C. Section 1983, "[a] prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Circ. 1995).

A claim of deliberate indifference involves both an objective and a subjective component. The objective component requires a plaintiff to demonstrate that he suffered an objectively serious medical need. *Holden v. Hirner*, 663 F.3d 336, 342 (8th Cir. 2011). The subjective component requires a plaintiff to demonstrate that the defendant actually knew of, but deliberately disregarded, that need. *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997); *Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997). Establishing the subjective component of a deliberate indifference claim requires showing "a mental state akin to criminal recklessness." *Ryan v. Armstrong*, 850 F.3d 419, 425 (8th Cir. 2017) (quoting *Thompson v. King*, 730 F.3d 742, 746-47 (8th Cir. 2013)).

## Argument

These Defendants acknowledge that Plaintiff's non-union jaw fracture constitutes a serious medical need; however, Plaintiff cannot show that these Defendants ignored that condition.

### A.  Dr. Ernest Jackson

It has been held that prisoners do not have a constitutional right to any particular type of treatment.  *Long v. Nix*, 86 F.3d 761, 765 (8th Circ. 1996).  A medical decision not to order a particular course of treatment or testing does not represent cruel and unusual punishment.  *Estelle v. Gamble*, 429 U.S. 97, 107 (1976).  Likewise, mere displeasure with a course of medical treatment is not sufficient to rise to a constitutional

3573.53

violation.  *Kitchen v. Miller*, 343 F.Supp.2d at 823.  Plaintiff was evaluated and treated appropriately after each time he requested treatment.  Dr. Jackson, in exercising his independent medical judgment, denied requests for outside referrals for possible jaw surgery because of Plaintiff's heart health and other medical issues as determined by outside specialists. The serious risks of a cardiac event for an ASA IV patient, which include death, were greatly increased under prolonged general anesthesia.  The risks to the Plaintiff far outweighed the potential benefits, and given Plaintiff's history of failed jaw repair, the outcome of such a surgery was not guaranteed.

The focus of plaintiff's allegations against Dr. Jackson, and the sole contention raise by Plaintiff's expert, is that Dr. Jackson should not have denied the May 20. 2014 request to refer Plaintiff to an ear nose and throat specialist at the University of Missouri. Dr. Jackson was not indifferent to plaintiff's medical need in his denial of a referral of Plaintiff to the University of Missouri Otolaryngology department.  Prison doctors remain free to exercise their independent medical judgment and failure or refusal to follow the recommendations of outside consultants does not automatically amount to an abuse of that judgment. *Dulany v. Carnahan*, 132 F.3d 1234, 1240 (8th Cir. 1997); See *Vaughan v. Lacey*, 49 F.3d 1344, 1346 (8th Cir. 1995). Medical professionals may be absolved of liability if they responded reasonably to an inmate's medical needs, even if harm was not ultimately averted. *Id*. Medical providers can review the same information and come to different conclusions without being deliberately indifferent to a patient's needs. *See White v. Farrier*, 849 F. 2d 322, 327 (8th Cir. 1988). Dr. Jackson did not ignore plaintiff's medical need.  Dr. Jackson, in his role as Director of Dentistry, never treated Plaintiff and only addressed the referrals sent to him by Plaintiff's treating physicians.

Dr. Jackson consulted with the Regional Medical Director, who agreed in making the determination not to refer Plaintiff to the University of Missouri Otolaryngology department when the referral in question was not entirely within his area of expertise. Plaintiff was regularly seen by his treating dentists, physicians and outside consultants who either did not recommend corrective surgery or stated that Plaintiff was at an increased risk of a cardiac event if he underwent surgery. It was reasonable for Dr. Jackson not to risk Plaintiff's life by subjecting him to prolonged general anesthesia.

### B. Joyce Chamberlin

Plaintiff's sole allegation against Defendant Chamberlin is she was deliberately indifferent to his medical needs when on July 9, 2013 she allegedly prevented or delayed his treatment for a potential stroke. "An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." *Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997).  Thus, to withstand a motion for summary judgment, an inmate must submit sufficient evidence that the defendant ignored an acute or escalating situation, or that delays adversely affected the inmate's prognosis. *Beyerbach v. Sears*, 49 F.3d 1324, 1326 (8th Cir. 1995).  There is no evidence of harm resulting from any perceived delay in Defendant Chamberlin's treatment of plaintiff on July 9, 2013.

Plaintiff was evaluated by Nurse Chamberlin and promptly transferred to the hospital when she noted potential stroke symptoms.  The CT scan, MRI, and other tests performed at Cameron Regional Medical Center were all unremarkable and Plaintiff was sent back to WMCC the next day.  Contrary to plaintiff's allegations, Nurse Chamberlin

3573.53

evaluated him and sent him to the hospital for further evaluation and care in a timely manner which resulted in his quick return.  Plaintiff suffered no damage as a result of the alleged delay in treatment.

Additionally, Plaintiff alleges that Nurse Chamberlin was sleeping prior to seeing him on July 9, 2013 which caused the delay in his treatment.  Defendant Chamberlin categorically denies this allegation; however, even if Plaintiff's allegation were it true, then Nurse Chamberlin could not have had actual knowledge of Plaintiff's medical need at the time.  The subjective component of deliberate indifference requires Plaintiff to demonstrate that the defendant <u>actually knew of</u>, but deliberately disregarded, his needs. *Dulany* at 1239. Deliberate indifference must be measured by the official's knowledge <u>at the time</u> in question, not by "hindsight's perfect vision." *Jackson v. Everett*, 140 F.3d 1149, 1152 (8th Cir.1998).  Plaintiff admitted in his deposition that Nurse Chamberlin was not notified by Brett Jeschke, a guard at the prison, when he arrived. (Exhibit E – Transcript of Deposition of Plaintiff at 29-34). Plaintiff further stated in his deposition that had Nurse Chamberlin been notified by officer Jeschke that Plaintiff was waiting he would have been seen at that time. (Exhibit E at 30). Nurse Chamberlin could not have ignored a condition of which she was not aware.

Plaintiff's allegations of deliberate indifference are unsupported by the uncontroverted and materials facts as presented.  Based upon the above facts, reasons, and cited authorities, Defendants Jackson and Chamberlin did not deliberately disregard Plaintiff's medical needs and, therefore, was not deliberately indifferent thereto.  As there are no material facts in dispute and Plaintiff's allegations of deliberate indifference are unsupported, these Defendants are entitled to a judgment as a matter of law.

3573.53

WHEREFORE, Defendants Jackson and Chamberlin pray that this Honorable Court grant summary judgment in favor of the these Defendants, and for all other relief that this Court may deem just and proper.

/s/ J Thaddeus Eckenrode
J. Thaddeus Eckenrode MoBar #31080
ECKENRODE-MAUPIN, Attorneys at Law
11477 Olde Cabin Rd., Ste. 110
St. Louis, MO 63141
(314) 726-6670 (Telephone)
(314) 726-2106 (Fax)
jte@eckenrode-law.com
*Attorney for Defendants Jackson and Chamberlin*

3573.53

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and accurate copy of the foregoing was served via first class U.S. Mail, postage prepaid on this 21st day of September, 2018 to the following:

**Patrick J. Kenny**
Armstrong & Teasdale
7700 Forsyth Blvd. Ste. 1800
St. Louis, MO 63105-1847
*Attorney for Plaintiff(s) David Severance*


**Katherine Walsh**
Assistant Attorney General
P.O Box 861
St. Louis, MO 63188

*Attorney for Defendant(s) Brett Jeschke*


*/s/ Jacolyn Vasquez*

3573.53