**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| DAVID SEVERANCE )<br>)<br>  Plaintiff, )<br>)<br>v. )<br>)<br>CHARLES CHASTAIN, ET AL. )<br>)<br>  Defendants. )<br>) | Cause No. 4:15-CV-00074-CAS |

**DEFENDANTS ERNEST JACKSON AND JOYCE CHAMBERLIN'S
STATEMENT OF UNCONTROVERTED MATERIAL FACTS IN SUPPORT OF
THEIR MOTION FOR SUMMARY JUDGMENT**

COME NOW Defendants Dr. Ernest Jackson, and Joyce Chamberlin, by and through undersigned counsel, and in support of their Motion for Summary Judgment, hereby set forth the following Statement of Uncontroverted Facts, pursuant to Federal Rule of Civil Procedure Rule 56:

1. Plaintiff David Severance was incarcerated at the times of the events alleged at Western Missouri Correctional Center ("WMCC"). (Exhibit A - Plaintiff's Complaint at 6)

2. Defendant Ernest Jackson, at all times relevant to this matter, was employed as the Director of Dental Services for the Missouri Department of Corrections by Corizon, LLC. (Exhibit A at 5).

3. The Director of Dental Services for the Missouri Department of Corrections oversees the clinical aspect of dental services for twenty Missouri Department of Corrections facilities with dental clinics, provides clinical work when needed, and evaluates requests for referrals for outside dental services. (Exhibit F – Affidavit of Defendant Jackson).

1

4.  Defendant Joyce Chamberlin, at all times relevant to this matter, was employed as a Nurse at WMCC by Corizon, LLC. (Exhibit A at 4)

5.  On or about April 26, 2012, Plaintiff was punched in the jaw by another inmate causing him to suffer a broken jaw. (Exhibit A at 6, Exhibit C - MoDOC at 01168 and 01172).

6.  Dr. Robert Paolillo performed surgery using screws and titanium plates to correct the damage Plaintiff's jaw on April 27, 2012. (Exhibit A at 6 and Exhibit D - Severance 5298-9).

7.  Plaintiff developed an infection and/or allergic reaction to the implant which caused pain and swelling beginning on or about June 27, 2012 (Exhibit D - Severance 7032).

8.  Plaintiff underwent surgery due to the infection resulting in the removal of one of the implanted plates on July 18, 2012. (Exhibit A at 6 and Exhibit D - Severance 5883-7).

9.  Plaintiff was admitted to the Transitional Care Unit ("TCU") on July 18, 2012 on his return from the partial removal surgery. (Exhibit B - EM 0124)

10. Plaintiff was released from TCU to general population on August 1, 2012. (Exhibit C - MoDOC 1995).

11. Plaintiff was seen by Dr. Paolillo for a follow up appointment on September 12, 2012; he did not recommend another repair surgery. (Exhibit B - EM 0252)

12. Plaintiff was seen by Dr. Paolillo for an appointment on April 9, 2013 and discussed the risks and benefits, plan for surgery including removing all foreign bodies in plaintiff's fracture site and deciding where to re-plate, where to do bone grafts and where to leave the fracture as is. (Exhibit D - Severance 6024-7).

13. Plaintiff had surgery to remove the remaining titanium plates and screws from his jaw on April 11, 2013. (Exhibit D - Severance 6069).

14. Dr. Paolillo saw Plaintiff on May 14, 2013 for a follow up, noting some bony healing. (Exhibit D - Severance 6985)

15. Plaintiff self declared a medical emergency on May 20, 2013 due to chest pain and numbness on his left side. (Exhibit B - EM 0407-9).

16. Nurse Chamberlin ordered plaintiff transferred to a local hospital at the direction of the on-call physician. (Exhibit B - EM 0407-9).

17. Plaintiff was seen by the hospital radiology service which recommended increasing plaintiff's dosage of Imdur, a blood vessel dilation medication. (Exhibit D - Severance 6196-8)

18. Dr. Tiffany Watson-Hubbard, a physician at Saint Joseph Medical Center, noted plaintiff's history of severe cardiac artery disease which is not amendable to surgical intervention. (Exhibit D - Severance 6196-8)

19. Dr. Watson-Hubbard diagnosed Plaintiff with a chest pain likely due to stable angina and discharged him from the hospital on May 21, 2013. (Exhibit D - Severance 6196-8).

20. Dr. Paolillo saw plaintiff in consult on June 12, 2013, noting that plaintiff's x-rays showed his jaw was beginning to develop boney ingrowth over the fracture. (Exhibit D - Severance 6984).

21. Dr. Paolillo did not recommend additional surgery at this appointment. (Exhibit D - Severance 6984).

22. Plaintiff self declared a medical emergency on July 9, 2013 for headache, visual impairment and chills; he was seen by Nurse Joyce Chamberlin.  (Exhibit B - EM 0458-9).

23. Nurse Chamberlin notified the on-call physician, who ordered plaintiff sent to Cameron Regional Medical Center by ambulance. (Exhibit B - EM 0458-9).

3

24. Plaintiff underwent a CT scan on July 9, 2013 which was unremarkable. (Exhibit D - Severance 4331-3).

25. Plaintiff underwent Magnetic Resonance Angiography and Magnetic Resonance Imaging on July 10, 2013, which was unremarkable. (Exhibit D - Severance 4336-7).

26. Plaintiff was diagnosed as having suffered a possible stroke on July 10, 2013 by staff at Cameron Regional Medical Center. (Exhibit D - Severance 4331-3).

27. Plaintiff was returned to WMCC on July 10, 2013. (Exhibit B - EM 0461-2).

28. Due to the stroke, Dr. Paolillo indicated on October 23, 2013 that Mr. Severance's jaw could not be treated for six (6) to twelve (12) months.  (Exhibit A at 6 and Severance at 6958).

29. On November 21, 2013 Dr. Bessey, an outside oral surgeon, rated Plaintiff a "IV" on the American Society of Anesthesiologists classification of physical health, meaning reconstruction surgery was high risk due to his cardiac disease. (Exhibit D - Severance at 4286-7).

30. On December 3, 2013, Corizon Dentist Dr. Bradshaw reviewed the oral surgeon's determination that plaintiff was not a good candidate for any surgery or grafting due to his health and the medications he was taking. (Exhibit B - EM at 0550).

31. Plaintiff suffered a seizure on December 11, 2013. (Exhibit C - MoDOC 01702).

32. Plaintiff was admitted to SSM St. Mary's on April 3, 2014 for chest pain. (Exhibit D - Severance 7094-96 and Exhibit B - EM 3373).

33. Plaintiff had a panoramic dental x-ray taken on May 1, 2014. (Exhibit B - EM 0609).

34. Dr. Mark Bradshaw reviewed plaintiff's fractured jaw on May 1, 2014. (Exhibit B - EM 0609).

35. Dr. Bradshaw requested plaintiff be referred to an outside oral surgeon on May 1, 2014. (Exhibit B - EM 0609).

36. The request was approved on May 16, 2014. (Exhibit B - EM 0609).

37. Dr. Bradshaw reviewed plaintiff's oral surgery consultation report on May 20, 2014. (Exhibit B - EM 0614)

38. On May 20, 2014, Dr. Bradshaw requested referral of plaintiff's case to the doctors of the University of Missouri Columbia Ear Nose and Throat department/clinic. (Exhibit B - EM 0614).

39. On May 23, 2014, Dr. Jackson requested additional information be provided before approving the referral. (Exhibit B - EM 0614).

40. Plaintiff was seen by Nurse Practitioner Brett Ferguson on June 5, 2014 for pain related to his fractured jaw. (Exhibit B - EM 0630-1).

41. Dr. Jackson had not received the requested additional information as of June 9, 2014. (Exhibit B - EM 0614).

42. Dr. Jackson reviewed the referral request with the Corizon Regional Medical Director and the determination was made not to approve the referral. (Exhibit F - Affidavit of Defendant Jackson at 13 and 14 and Exhibit G – Transcript of Deposition of Dr. Jackson at 63-64).

43. On June 10, 2014 Plaintiff was seen by Dr. Bradshaw and Dr. Emmanuel Afuwape, an internal medicine physician, to discuss surgical options for repairing plaintiff's broken jaw. (Exhibit B - EM 0644-5)

5

44. Plaintiff was informed that surgery was too dangerous and potentially <u>life threatening</u> due to his health conditions and the number of medications he was taking. (Exhibit D - Severance 6618).

45. Plaintiff was admitted to the Mineral Area Regional Medical Center for chest pains on June 12, 2014. (Exhibit D - Severance at 6592).

46. Plaintiff's 2D echocardiogram showed that plaintiff's ejection fraction around 40%/ (Exhibit D - Severance at 6592).

47. Plaintiff saw Dr. Bradshaw on July 3, 2014 for jaw pain, redness, swelling and infected gums. (Exhibit B - EM 0669).

48. Dr. Bradshaw prescribed Amoxicillin but would not offer further treatment until he received the cardiologist's consult. (Exhibit B - EM 0669).

49. A cardiac stress test was performed on Plaintiff on July 14, 2014 which showed mildly decreased left ventricular systolic function with a post stress left ventricular ejection fraction of 41% and represented a moderate to high likelihood of the presence of hemodynamically significant segmental coronary artery disease and a moderate risk of future cardiac events. (Exhibit D - Severance 4250-51).

50. In a letter to ERDCC dated July 14, 2014, Dr. Conrad Balcer, an outside cardiologist, stated that plaintiff appeared to have intermediate clinical predicators of increased cardiovascular risk during surgery and that the worsening of Plaintiff's stress test without clearly associated symptoms is worrisome. (Exhibit D - Severance 4254-56).

51. Dr. Afuwape reviewed the results of plaintiff's tests and the impressions of Dr. Balcer on August 28, 2014 and ordered a repeat cardiac catheterization. (Exhibit C - MoDOC 1869-70).

52. On September 22, 2014 Dr. Conrad Belcer performed a cardiac catheterization on Plaintiff. (Exhibit D - Severance at 4245-7).

53. Dr. Balcer stated in his report that plaintiff was ok for non-cardiac surgery even though he was at increased risk, but that delaying surgery would not likely reduce that risk. (Exhibit D - Severance at 4244).

54. Plaintiff was a no show for a chronic care appointment on October 10, 2014 and a dental appointment on October 15, 2014 due to his confinement in administration segregation ("Ad Seg"). (Exhibit B - EM 0767-8).

55. Plaintiff saw Dr. Bradshaw on October 16, 2014 regarding toothaches and a "sharp" tooth. (Exhibit B - EM 0772).

56. Dr. Bradshaw requested Plaintiff be referred to an oral surgeon for removal of his infected teeth on October 13, 2014. (Exhibit B - EM 0772).

57. Dr. Jackson approved plaintiff's referral to an oral surgeon for removal of his infected teeth on October 27, 2014. (Exhibit B - EM 0772).

58. Dr. Bradshaw informed plaintiff of the approved oral surgery on November 5, 2014. (Exhibit B - EM 0791).

59. Plaintiff had 6 teeth removed by Oral Surgeon Dr. Robert Bessey on December 12, 2014 under general anesthesia. (Exhibit B - EM 0832).

60. Due to Plaintiff's rating as an ASA III-IV, the procedure to remove his infected teeth was done in an operating room in a hospital setting instead of a clinical setting. (Exhibit B - EM 0832).

61. Dr. Bradshaw saw Plaintiff for a follow up on December 15, 2014; plaintiff was feeling well following the extraction surgery. (Exhibit B - EM 0897).

62. Plaintiff informed Dr. Victoria Reinholdt on December 19, 2014 that he would not stop smoking because a specialist told him that he was so bad it wouldn't really make a difference.  (Exhibit B - EM 0895-6).

63. Plaintiff self declared an emergency due to chest pain on January 5, 2015. (Exhibit B - EM 0916-7).

64. Dr. Victoria Reinholdt requested a stress test and same day cardiac consult with Dr. Balcer. (Exhibit B - EM 0917).

65. Plaintiff underwent a cardiac stress test on March 2, 2015.  (Exhibit B - EM 0917).

66. Dr. Balcer evaluated the results of the stress test to indicate plaintiff had significant interval worsening and was at a moderately increased risk of future cardiac events.  (Exhibit B - EM 0917-8).

67. Plaintiff was fit for dentures by Dr. Bradshaw on April 20, 2015. (Exhibit B - EM 0990).

68. Dr. Bradshaw adjusted plaintiff's dentures for a better fit on April 27, 2015. (Exhibit B - EM 0991).

69. Plaintiff was seen by Dr. Chastain on August 11, 2015. (Exhibit B - EM 1026)

70. Dr. Chastain noted at that encounter that Plaintiff's angina had worsened and that Plaintiff had increased his intake of nitroglycerine to twice daily. (Exhibit B - EM 1026)

71. Plaintiff was seen by Dr. Robert Jarret on March 21, 2016 regarding jaw pain.  (Exhibit B - EM 1084).

72. Dr. Jarret requested Plaintiff be referred to an oral surgeon on March 21, 2016. (Exhibit B - EM 1084).

73. Dr. Jackson reviewed x-rays provided by Dr. Jarret and approved plaintiff's referral to an oral surgeon on March 31, 2016. (Exhibit B - EM 1084).

74. Plaintiff was released from Department of Corrections Custody on June 6, 2016. (Exhibit B - EM 1103).

*/s/ J. Thaddeus Eckenrode*
J. Thaddeus Eckenrode MoBar #31080
ECKENRODE-MAUPIN, Attorneys at Law
11477 Olde Cabin Rd., Ste. 110
St. Louis, MO 63141
(314) 726-6670 (Telephone)
(314) 726-2106 (Fax)
jte@eckenrode-law.com
*Attorney for Defendants Jackson and Chamberlin*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing was served via electronic mail on this 21st day of September, 2018 to the following:

**Patrick J. Kenny**
**Lauren Haley Navarro**
Armstrong & Teasdale
7700 Forsyth Blvd. Ste. 1800
St. Louis, MO 63105-1847
pkenny@armstrongteasdale.com
lnavarro@armstrongteasdale.com
*Attorneys for Plaintiff David Severance*


**Katherine Walsh**
Assistant Attorney General
P.O Box 861
St. Louis, MO 63188
Katherine.walsh@ago.mo.gov
*Attorney for MDOC Defendants*

*/s/ Jacolyn Vasquez*

9