UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DAVID SEVERANCE, | ) |
| Plaintiff, | ) |
| v. | ) No. 4:15-CV-74 CAS |
| DR. CHARLES WILLIAM CHASTAIN, et al., | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on a motion for summary judgment filed by defendant Dr. Ernest Jackson ("defendant").[1] Plaintiff David Severance brings this action pursuant to 42 U.S.C. § 1983 through appointed counsel, alleging violations of his Eighth Amendment rights while incarcerated at the Western Missouri Correctional Center ("WMCC"). Plaintiff opposes the motion for summary judgment and it is fully briefed. For the following reasons, the motion will be granted in all respects.

**Legal Standard**

The standards applicable to summary judgment motions are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

---

[1] The motion was also filed by defendant Joyce Chamberlin, who plaintiff voluntarily dismissed from this case on October 3, 2018. [Doc. 211] As a result, the motion is moot as to defendant Joyce Chamberlain.

The initial burden is placed on the moving party. City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988) (the moving party has the burden of clearly establishing the non-existence of any genuine issue of fact that is material to a judgment in its favor). Once this burden is discharged, if the record shows that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on a material factual issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

Once the burden shifts, the non-moving party may not rest on the allegations in his pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); Herring v. Canada Life Assur. Co., 207 F.3d 1026, 1029 (8th Cir. 2000); Allen v. Entergy Corp., 181 F.3d 902, 904 (8th Cir. 2000), cert. denied, 528 U.S. 1063 (1999). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). A dispute about a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Herring, 207 F.3d at 1029 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A party resisting summary judgment has the burden to designate the specific facts that create a triable question of fact. See Crossley v. Georgia-Pacific Corp., 355 F.3d 1112, 1114 (8th Cir. 2004). Self-serving, conclusory statements without support are not sufficient to defeat summary judgment. See Conolly v. Clark, 457 F.3d 872, 876 (8th Cir. 2006).

With this standard in mind, the Court accepts the following facts as true for purposes of resolving this motion for summary judgment.

**Facts**

Plaintiff was incarcerated at WMCC on April 26, 2012 when he suffered from a fractured jaw after being struck in the face with a metal lock by a fellow inmate. Plaintiff was released from custody on June 12, 2016. Defendant is the Director of Dental Services for the Missouri Department of Corrections. His job duties include overseeing the dental services for twenty Missouri Department of Corrections facilities.

On April 27, 2012, plaintiff presented to Dr. Robert Paolillo at St. Joseph's Medical Center for surgical implantation of titanium plates to correct his fractured jaw. On June 27, 2012, plaintiff complained of oral pain and swelling, which Dr. Paolillo attributed to an infection. On July 18, 2012, plaintiff underwent surgery to remove one of the implanted plates. Plaintiff was admitted to the Transitional Care Unit ("TCU") from July 18, 2012 to August 1, 2012 for recovery. Plaintiff was seen for follow up appointments with Dr. Paolillo on September 12, 2012 and April 9, 2013. On April 11, 2013, plaintiff underwent surgery to remove the remaining titanium plates and hardware from his jaw due to the continued non-healing infection.

On May 20, 2013, plaintiff complained of chest pain. He was transferred to a local hospital where it was noted that plaintiff suffered from stable angina and a history of severe cardiac artery disease.

On June 12, 2013, plaintiff saw Dr. Paolillo for a post-surgical appointment. Dr. Paolillo noted that plaintiff's x-rays showed his jaw was beginning to develop a bony ingrowth over the fracture. Additional surgery was not recommended at that time.

On July 10, 2013, plaintiff was diagnosed by medical staff at Cameron Regional Medical Center as having suffered from a possible stroke. As a result of this medical opinion, Dr.

Paolillo indicated on October 23, 2013 that plaintiff's jaw could not be treated for approximately six to twelve months.

On November 21, 2013, plaintiff presented to Dr. Bessey, an outside oral surgeon at Jefferson City Oral & Maxillofacial Surgery, LLC, for a consultation regarding the treatment of his jaw. Dr. Bessey opined that plaintiff needed jaw reconstruction, but that he was a "poor candidate for grafting" and would be a "high risk" patient due to plaintiff's coronary artery disease. Dr. Bessey suggested that plaintiff be referred to an Ear, Nose, and Throat ("ENT") specialist at the University of Missouri, Columbia. This referral was not approved by defendant. Defendant testified in his affidavit that he denied the referral because of Dr. Paolillo's opinion that no treatment should be considered for at least six months.

On December 3, 2013, plaintiff was treated by Dr. Bradshaw, a dentist at WMCC, who made the following medical assessment: "[patient] not good candidate for any surgery/grafting due to [patient's] health [and] multiple medications[.]" On December 11, 2013, plaintiff suffered from a seizure. On April 3, 2014, plaintiff was admitted to SSM St. Mary's due to complaints of chest pain. On May 20, 2014, Dr. Bradshaw reviewed plaintiff's medical records regarding his jaw complication and gave his opinion that plaintiff be referred to an ENT at the University of Missouri, Columbia.

Plaintiff's medical information was subsequently sent to defendant for the purpose of determining whether the referral should be approved. Defendant reviewed the request with the Regional Medical Director of WMCC and made the decision to deny the referral. On June 10, 2014, plaintiff saw Dr. Bradshaw and Dr. Afuwape, an internal medicine physician, for a consultation regarding the treatment of his jaw. Under the assessment portion of the medical

records, the doctors noted: "[plaintiff] informed that surgery is too dangerous due to his health status and the number of medications he is taking. Any surgery would be life threatening."

Following the denial, plaintiff received continued medical treatment, which included the removal of infected teeth by an oral surgeon on October 16, 2014, after a cardiologist indicated that "it is probably reasonable to proceed with his anticipated surgical procedure; however, the worsening of his stress test without clearly associated systems is clearly worrisome in that his complaints of chest pain or lack thereof may not accurately predicate his cardiac event risk."

From January 5, 2015 to August 11, 2015, plaintiff was consistently treated for his cardiac issues, which included a stress test and an increase of nitroglycerine dosages. On March 21, 2016, plaintiff presented to Dr. Jarrett, a WMCC physician, for complaints of jaw pain. Dr. Jarrett requested that plaintiff be referred to an oral surgeon and x-rays were sent to defendant for his review. Defendant approved plaintiff's referral on March 31, 2016. Plaintiff, however, did not receive an appointment with an oral surgeon because he was discharged from custody approximately two months later on June 6, 2016.

**Discussion**

Plaintiff alleges that defendant's failure to approve the referral to see an ENT at the University of Missouri in June 2014 and failure to instruct WMCC dentists to refer plaintiff to an outside oral surgeon constituted deliberate indifference to plaintiff's serious medical needs in violation of the Eighth Amendment. In the summary judgment motion, defendant asserts that he did not ignore plaintiff's medical need, but instead exercised his independent medical judgment to deny the referral due to a concern for the risk of surgical complications.

"Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if

5

those needs are 'serious.'" Hudson v. McMillian, 503 U.S. 1, 9 (1992). "[T]he failure to treat a medical condition does not constitute punishment within the meaning of the Eighth Amendment unless prison officials knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge." Long v. Nix, 86 F.3d 761, 765 (8th Cir. 1996). "As long as this threshold is not crossed, inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment." Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997) (citing Long, 86 F.3d at 765). "Deliberate indifference may be demonstrated . . . by prison doctors who fail to respond to prisoner's [sic] serious medical needs." Id. (citing Estelle v. Gamble, 429 U.S. 97, 104-05 (1976)). "Mere negligence or medical malpractice, however, are insufficient to rise to a constitutional violation." Id. (citing Estelle, 429 U.S. at 106).

An Eighth Amendment claim that prison officials were deliberately indifferent to the medical needs of inmates involves both an objective and a subjective component. Coleman v. Rahija, 114 F.3d 778, 784 (8th Cir. 1997); see also Farmer v. Brennan, 511 U.S. 825 (1994). In a case concerning the deprivation of medical care, a plaintiff must demonstrate that (1) he suffered an objectively serious medical need; and (2) the defendant actually knew of the medical need but was deliberately indifferent to it. See Grayson v. Ross, 454 F.3d 802, 808-09 (8th Cir. 2006).

"An objectively serious medical need is one that either has been diagnosed by a physician as requiring treatment, or is so obvious that even a 'layperson would easily recognize the necessity for a doctor's attention.'" Jones v. Minnesota Dep't of Corrections, 512 F.3d 478, 481 (8th Cir. 2008) (quoting Coleman, 114 F.3d at 784). "To establish a constitutional violation, it is not enough that a reasonable official should have known of the risk. Rather, a plaintiff must

6

demonstrate the official actually knew of the risk and deliberately disregarded it." Id. (internal quotation and citations omitted). "The determination that prison officials had actual knowledge of a serious medical need may be inferred from circumstantial evidence or from the very fact that the risk was obvious." Id. at 481-82. "If prison officials have actual knowledge of a serious medical need, and fail to take reasonable measures to address it, they may be held liable for deliberate indifference." Jones, 512 F.3d at 482. "However, a showing of deliberate indifference is greater than gross negligence and *requires more than mere disagreement with treatment decisions*." Pietrafeso v. Lawrence County, S.D., 452 F.3d 978, 983 (8th Cir. 2006) (quoting Gibson v. Weber, 433 F.3d 642, 646 (8th Cir. 2006)) (emphasis added) (quotation marks and brackets omitted).

When a delay in medical treatment is part of the alleged constitutional deprivation, as in this case where defendant denied a referral for plaintiff to consult with an outside ENT for a fourth oral surgery, the second element of the Farmer test must also include "the effect of delay in treatment." Beyerbach v. Sears, 49 F.3d 1324, 1326 (8th Cir. 1995) (quotation marks and quoted case omitted). As a result, to succeed on a delay in medical treatment claim, the plaintiff "must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment." Laughlin v. Schriro, 430 F.3d 927, 929 (8th Cir. 2005) (quoting Crowley v. Hedgepeth, 109 F.3d 500, 502 (8th Cir. 1997)) (quotation marks omitted).

On summary judgment, the plaintiff must offer evidence that a delay in treatment has a detrimental effect. In the absence of such evidence, the plaintiff "fail[s] to raise a genuine issue of fact on an essential element of his claim." Id.; accord Beyerbach, 49 F.3d at 1327. In Beyerbach, the plaintiff sued two prison officers and the prison nurse for delay in treating his broken hand. The district court denied defendants' motion for summary judgment. Beyerbach,

49 F.3d at 1325. The Eighth Circuit Court of Appeals reversed, noting that while a broken hand could be a serious medical need, the inmate failed to present "verifying medical evidence" that the defendants "ignored an acute or escalating situation" or that the "delays adversely affected his prognosis, given the type of injury[.]" Id. at 1326 (quotation marks and quoted cases omitted).

Similarly, the Eighth Circuit has upheld the entry of summary judgment in favor of defendant prison officials where a plaintiff failed to submit verifying medical evidence that a delay in treatment adversely or detrimentally affected the plaintiff's condition or prognosis. In Laughlin, the Eighth Circuit upheld the entry of summary judgment in favor of prison officers and officials who delayed treating the inmate's heart attack where the inmate failed to offer evidence "establishing that any delay in treatment had a detrimental effect." Laughlin, 430 F.3d at 929; see also Dulany, 132 F.3d at 1243 (affirming summary judgment in favor of defendant prison officials where plaintiffs failed to submit verifying medical evidence showing the delay in treatment of her acute cardiac condition and chest pain resulted in an adverse effect).

In the instant case, defendant moves for summary judgment on plaintiff's claims against him, which are based on (1) defendant's failure to approve a referral request made from one of plaintiff's treating physicians for a consultation at the University of Missouri Medical Center and (2) failure to instruct WMCC dentists to refer plaintiff to an outside oral surgeon. Plaintiff claims that, as a result, treatment of his jaw condition was delayed.

Defendant does not dispute that plaintiff had an objectively serious medical need or that defendant was aware of the need. As a result, the Court's analysis of the motion focuses on the second part of the Farmer test, deliberate indifference and effect of the delay, if any, on plaintiff's condition.

While there is voluminous evidence in the record documenting plaintiff's diagnosis and treatment, plaintiff offers no verifying medical evidence establishing that any delay in approving a referral for a consultation with an outside ENT had a detrimental effect on his condition or prognosis. This is not the kind of case in which the deprivation alleged by plaintiff would be obvious to a layperson. Cf. Robertson v. Bradshaw, 198 F.3d 645, 647 (8th Cir. 1999) (no verifying medical evidence necessary to establish the detrimental effects of a delay in refusing diabetes medicine and special diet to a known diabetic). The factual record reflects that while it was recommended by Dr. Bessey on November 21, 2013 and Dr. Bradshaw on May 20, 2014 that plaintiff should consult with an ENT at the University of Missouri, there is an absence of evidence showing that a delay in approving such a referral was detrimental to plaintiff's condition or that a lack of urgency in approving such a referral created a risk to his health.

Further, despite Dr. Bessey's recommendation for a referral in November 2013, plaintiff's own oral surgeon Dr. Paolillo opined one month prior that plaintiff's jaw could not be treated for six to twelve months because he suffered from a recent stroke. And, even when plaintiff was approved for the removal of infected teeth, in October 2014, the cardiologist expressed hesitation in his notes, stating: "it is probably reasonable to proceed with his anticipated surgical procedure; however, the worsening of his stress test without clearly associated systems is clearly worrisome in that his complaints of chest pain or lack thereof may not accurately predicate his cardiac event risk." Plaintiff's dentist also offered his medical assessment that plaintiff was not a good candidate for any surgery due to his health and multiple medications. Even Dr. Bradshaw, who recommended the referral with an outside ENT, noted on June 10, 2014 that "surgery is too dangerous due to his health status and the number of medications he is taking. Any surgery would be life threatening."

Medical professionals within the prison system "remain free to exercise their independent medical judgment." Long, 86 F.3d 765. "Prisoners do not have a right to any particular course of medical care." Id. The undisputed material facts and medical records evidence that defendant did not ignore plaintiff's medical need, but instead exercised his own medical judgment. Defendant reviewed plaintiff's records and consulted with WMCC's Regional Medical Director before denying the referral for a surgical consultation with an outside ENT on the basis that plaintiff's treating physicians assessed him to be at risk of a cardiac event, including death, under prolonged anesthesia.

The voluminous medical records in this case show that plaintiff's medical needs were not disregarded, as he received a significant amount of medical care and follow-up appointments with various practitioners, both inside the prison and from outside providers. They further show that defendant exercised his own medical judgment as the Director of Dental Services after consulting with the prison's Regional Medical Director. This is not a case where plaintiff was medically approved for surgery and referral for the surgery was denied or delayed. Cf. Wise v. Lappin, 674 F.3d 939 (8th Cir. 2012) (summary judgment inappropriate when defendant was cleared for oral surgery but prison officials delayed the procedure). Here, plaintiff was recommended to consult with an outside ENT, but medical records reflected that he would not ultimately be cleared for surgery due to his cardiac complications, stroke symptoms, and multiple medication regimen. Plaintiff may disagree with defendant's ultimate decision to deny the referral request, but under Eighth Circuit law, "mere disagreement with treatment decisions does not rise to the level of a constitutional violation." Long, 86 F.3d 765; Popoalii v. Corr. Med. Services, 512 F.3d 488, 499 (8th Cir. 2008).

Thus, the Court finds plaintiff has failed to meet his burden to demonstrate that there is a genuine issue of material fact about whether defendant was deliberately indifferent to his serious medical needs, that the delay in consulting with an ENT had a detrimental effect on his condition or prognosis, or that defendant was deliberately indifferent, i.e., more than grossly negligent, in denying the referral to an outside EMT for a fourth oral surgery consultation. See Laughlin, 430 F.3d at 929. The Court, therefore, concludes summary judgment should be granted in favor of defendant.

**Conclusion**

For the foregoing reasons, the motion for summary judgment filed by defendant Dr. Ernest Jackson should be granted in all respects.

Accordingly,

**IT IS HEREBY ORDERED** that defendant Dr. Ernest Jackson's motion for summary judgment is **GRANTED**. [Doc. 203].

An appropriate partial judgment will accompany this memorandum and order.

**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this  20th  day of November, 2018.